**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

TRACI L. FILECA,

                    Plaintiff,

                                          Case No. 6:17-cv-1547-Orl-40JRK

vs.

NANCY A. BERRYHILL,
Deputy Commissioner for Operations
of the Social Security Administration,
performing the duties and functions not
reserved to the Commissioner of
Social Security,

                    Defendant.

_____/

## REPORT AND RECOMMENDATION[1]

### I. Status

    Traci L. Fileca ("Plaintiff") is appealing the Commissioner of the Social Security Administration's ("SSA('s)") final decision denying her claims for disability insurance benefits ("DIB") and supplemental security income ("SSI"). Plaintiff's alleged inability to work is the result of issues with "[m]uscles from [the] lower back, right hip, [and] right hamstring," a back injury, interstitial cystitis, heart murmur, rapid and irregular heart rate, persistent asthma, allergies, gastroesophageal reflux disease (GERD), migraine headaches, blood pressure, chest pains, "knee/foot pain," depression, attention-deficit/hyperactivity disorder, post

---

[1]    "Within 14 days after being served with a copy of [a report and recommendation on a dispositive issue], a party may serve and file specific written objections to the proposed findings and recommendations." Fed. R. Civ. P. 72(b)(2). "A party may respond to another party's objections within 14 days after being served with a copy." Id. A party's failure to serve and file specific objections to the proposed findings and recommendations alters the scope of review by the District Judge and the United States Court of Appeals for the Eleventh Circuit, including waiver of the right to challenge anything to which no specific objection was made. See Fed. R. Civ. P. 72(b)(3); 28 U.S.C. § 636(b)(1)(B); 11th Cir. R. 3-1; Local Rule 6.02.

traumatic stress disorder, and "ODD."[2] See Transcript of Administrative Proceedings (Doc. No. 15; "Tr." or "administrative transcript"), filed December 8, 2017, at 80-81, 92-93, 106, 117, 284 (emphasis omitted). Plaintiff filed an application for DIB on October 27, 2011, Tr. at 254, alleging an onset disability date of September 17, 2011, Tr. at 81.[3] On November 17, 2011, Plaintiff filed an application for SSI, alleging an onset disability date of September 17, 2011. Tr. at 256.[4] The applications were denied initially, Tr. at 80-91, 104, 134-38, 145 (DIB); Tr. at 92-103, 105,139-44, 146 (SSI), and upon reconsideration, Tr. at 106-16, 128, 132, 149-53, 159 (DIB); Tr. at 117-27, 129, 133, 154-58, 160 (SSI).

On July 19, 2013, an Administrative Law Judge ("ALJ") held a hearing, during which he heard testimony from Plaintiff, who was represented by counsel, and a vocational expert ("VE"). Tr. at 28-79. Following the hearing, the ALJ issued a decision on October 2, 2013 ("2013 decision"), finding Plaintiff not disabled through the date of the decision. Tr. at 15-21. The Appeals Council then accepted additional evidence in the form of a memorandum authored by Plaintiff's counsel. Tr. at 4-5; see Tr. at 371-72 (memorandum). On February 3, 2015, the Appeals Council denied Plaintiff's request for review, Tr. at 1-3, thereby making the ALJ's 2013 decision the final decision of the Commissioner.

---

[2]      ODD likely stands for oppositional defiant disorder.

[3]      Although actually completed on October 27, 2011, see Tr. at 254, the protective filing date of the application is listed elsewhere in the administrative transcript as October 26, 2011, see, e.g., Tr. at 80, 106.

[4]      Although actually completed on November 17, 2011, see Tr. at 256, the protective filing date of the application is listed elsewhere in the administrative transcript as October 26, 2011, see, e.g., Tr. at 92, 117.

Plaintiff appealed the final 2013 decision to this Court on March 31, 2015. <u>See</u> Complaint (Doc. No. 1), Case No. 3:15-cv-406-J-32JRK.[5] On July 5, 2016, the Honorable Timothy J. Corrigan, United States District Judge, entered an Order adopting the undersigned's Report and Recommendation and reversing and remanding the Commissioner's final decision for further administrative proceedings. Tr. at 726-28, 747-49 (duplicate) (Order); Tr. at 733-46 (Report and Recommendation). On July 6, 2016, Judgment entered reversing and remanding the matter to the Commissioner. Tr. at 729, 731 (duplicate).

On March 12, 2015, just prior to appealing the Commissioner's final decision to this Court, Plaintiff filed another application for DIB. Tr. at 883. The application was denied initially, Tr. at 833-35, and upon reconsideration, Tr. at 795-99. On December 31, 2015, Plaintiff requested a hearing before an ALJ. Tr. at 800-01. While this request was pending, the Appeals Council, on remand from this Court, entered an Order on October 14, 2016 remanding the case to the ALJ and directing the ALJ to consolidate the later-filed application with the initial applications. Tr. at 787-88.

On May 10, 2017, the same ALJ held another hearing, during which he heard testimony from Plaintiff, who was again represented by counsel, and a VE. Tr. at 699-725. On June 22, 2017, the ALJ issued a Decision finding Plaintiff not disabled through the date of the Decision. Tr. at 673-83 ("Decision"). The Appeals Council "decided not to exercise its right to review the Decision," making the ALJ's Decision the final decision of the Commissioner. Complaint (Doc. No. 1), filed August 24, 2017, at 2 ¶ 6. On August 24, 2017,

---

[5]         Other than this case citation, citations to Plaintiff's prior appeal are to documents from the appeal that are included in the administrative transcript.

Plaintiff commenced this action under 42 U.S.C. §§ 405(g) and 1383(c)(3)[6] by filing a Complaint (Doc. No. 1), seeking judicial review of the Commissioner's final decision.

On March 16, 2018, the parties filed a Joint Memorandum (Doc. No. 19; "Joint Mem.") in accordance with the Scheduling Order (Doc. No. 16), entered December 8, 2017. Plaintiff raises four issues on appeal: (1) "[w]hether the ALJ applied the correct legal standards to the opinions of Dr. [Bharat] Tolia and Dr. [Shiram S.] Marathe," Joint Mem. at 12 (emphasis omitted); (2) "[w]hether the ALJ applied the correct legal standards to the opinion of Dr. [Loc Kim] Le," id. at 20 (emphasis omitted); (3) "[w]hether the ALJ accounted for [Plaintiff's] moderate limitations in concentration, persistence, or pace at steps four and five of the sequential evaluation process," id. at 22 (emphasis omitted); and (4) "[w]hether the ALJ applied the correct legal standards at step five of the sequential evaluation process," id. at 26 (emphasis omitted). See id. at 12-20 (first issue), 20-22 (second issue), 22-26 (third issue), 26-29 (fourth issue). After a thorough review of the entire record and the Joint Memorandum, the undersigned recommends that the Commissioner's final decision be reversed and remanded for further administrative proceedings because the ALJ erred in evaluating the opinions of Dr. Tolia and Dr. Marathe.

On remand, a proper evaluation of the medical opinions of Dr. Tolia and Dr. Marathe (Plaintiff's first issue) may impact the ALJ's findings at step four and step five (Plaintiff's third and fourth issues). For this reason, the Court need not address Plaintiff's third and fourth issues. See Jackson v. Bowen, 801 F.2d 1291, 1294 n.2 (11th Cir. 1986) (per curiam) (declining to address certain issues because they were likely to be reconsidered on remand);

---

[6] Although Plaintiff is seeking review of the Commissioner's decision regarding Plaintiff's claim for SSI (in addition to the claim for DIB), Plaintiff's Complaint inadvertently omits that she is seeking review under § 1383(c)(3). See Complaint at 1 ¶ 3. Section 1383(c)(3), which incorporates § 405(g), grants the court jurisdiction to review these decisions. See 42 U.S.C. § 1383(c)(3).

Demenech v. Sec'y of the Dep't of Health & Human Servs., 913 F.2d 882, 884 (11th Cir. 1990) (per curiam) (concluding that certain arguments need not be addressed when the case would be remanded on other issues). The undersigned briefly addresses the ALJ's evaluation of Dr. Le's opinion (Plaintiff's third issue) and finds no error. However, as the proper evaluation of Dr. Tolia's and Dr. Marathe's opinions may affect the weight assigned to Dr. Le's opinion, the ALJ should reconsider it on remand, if appropriate.

## II. The ALJ's Decision

When determining whether an individual is disabled,[7] an ALJ must follow the five-step sequential inquiry set forth in the Code of Federal Regulations ("Regulations"), determining as appropriate whether the claimant (1) is currently employed or engaging in substantial gainful activity; (2) has a severe impairment; (3) has an impairment or combination of impairments that meets or medically equals one listed in the Regulations; (4) can perform past relevant work; and (5) retains the ability to perform any work in the national economy. 20 C.F.R. §§ 404.1520, 416.920; see also Phillips v. Barnhart, 357 F.3d 1232, 1237 (11th Cir. 2004). The claimant bears the burden of persuasion through step four, and at step five, the burden shifts to the Commissioner. Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987).

Here, the ALJ followed the five-step inquiry. See Tr. at 675-83. At step one, the ALJ determined that Plaintiff "has not engaged in substantial gainful activity since September 17, 2011, the alleged onset date." Tr. at 675 (emphasis and citation omitted). At step two, the ALJ found that Plaintiff "has the following severe impairments: disorders of the spine,

---

[7]     "Disability" is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

migraine headaches, ADHD, and seizure disorder." Tr. at 676 (emphasis and citation omitted). At step three, the ALJ ascertained that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 [C.F.R.] Part 404, Subpart P, Appendix 1." Tr. at 676 (emphasis and citation omitted).

The ALJ determined that Plaintiff has the following residual functional capacity ("RFC"):

> [Plaintiff can] perform sedentary work as defined in 20 [C.F.R. §§] 404.1567(a) and 416.967(a) except she can sit 7 hours in an 8[-]hour workday, though only one hour at a time and stand and walk up to 4 hours in an 8[-]hour workday, up to 30 minutes at one time. She can lift up to 10 pounds occasionally and 5 pounds frequently. She can occasionally bend, stoop, kneel, and reach above shoulder level. She should avoid crawling and crouching. She can climb stairs occasionally but never climb ladders, ropes, or scaffolding. She should not work around unprotected heights. Contact with the public and coworkers should be brief and superficial.

Tr. at 677 (emphasis omitted). At step four, the ALJ relied on the testimony of the VE and found that Plaintiff is "unable to perform any past relevant work." Tr. at 682 (emphasis and citation omitted). At step five, after considering Plaintiff's age ("40 years old . . . on the alleged disability onset date"), education ("at least a high school education"), work experience, and RFC, the ALJ again relied on the testimony of the VE and found that "there are jobs that exist in significant numbers in the national economy that [Plaintiff] can perform," Tr. at 682 (emphasis and citation omitted), including "sealer," "trimmer paster," and "table worker," Tr. at 683. The ALJ concluded that Plaintiff "has not been under a disability . . . from September 17, 2011, through the date of th[e D]ecision." Tr. at 683 (emphasis and citation omitted).

## III. Standard of Review

This Court reviews the Commissioner's final decision as to disability pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). Although no deference is given to the ALJ's conclusions of law, findings of fact "are conclusive if . . . supported by 'substantial evidence.'" Doughty v. Apfel, 245 F.3d 1274, 1278 (11th Cir. 2001) (citing Falge v. Apfel, 150 F.3d 1320, 1322 (11th Cir. 1998)). "Substantial evidence is something 'more than a mere scintilla, but less than a preponderance.'" Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005) (quoting Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987)). The substantial evidence standard is met when there is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Falge, 150 F.3d at 1322 (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). It is not for this Court to reweigh the evidence; rather, the entire record is reviewed to determine whether "the decision reached is reasonable and supported by substantial evidence." Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991) (citation omitted). The decision reached by the Commissioner must be affirmed if it is supported by substantial evidence—even if the evidence preponderates against the Commissioner's findings. Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1158-59 (11th Cir. 2004) (per curiam).

## IV. Discussion

Because the first two issues raised by Plaintiff involve medical opinions, they are addressed together. As noted above, Plaintiff's third and fourth issues are not addressed.

Plaintiff argues the ALJ erred in assessing the opinions of treating physicians Dr. Tolia and Dr. Marathe, as well as that of state agency consultant Dr. Le. See Joint Mem. at 12-17, 20-21. Plaintiff contends the ALJ's reasons for rejecting Dr. Tolia's opinions from 2013 and

2017 and Dr. Marathe's opinion from 2013 are "conclusory and fail[ ] to establish the requisite good cause." Id. at 14, 16. As to Dr. Le, Plaintiff asserts the RFC "fails to account for Dr. Le's opinion that [Plaintiff] needed to avoid even moderate exposure to extreme heat, humidity, noise, vibration, fumes, odors, dusts, gases, poor ventilation, and hazards." Id. at 20 (citation omitted).

Responding, Defendant argues that "[t]he ALJ specifically assigned little weight to the 2013 opinions because they were not based on clinical findings or [the physicians'] own records, which showed minimal clinical and diagnostic findings, and assigned little weight to the 2017 opinion because [the] record showed Plaintiff functioning at a much higher level than he notes, and his opinions were not supported by his own treatment notes documenting minimal clinical and diagnostic findings and conservative treatment." Id. at 19 (citation omitted). As to Dr. Le's opinion, Defendant contends that "[a]s noted by the ALJ, the record contained a great deal more medical evidence, which warrants a slightly more restrictive RFC" than that opined by Dr. Le. Id. at 21 (citations omitted).

## A. Summary of Opinions at Issue

### 1. Dr. Tolia

Dr. Tolia is a neurologist, who treated Plaintiff beginning in 2012 for a number of issues, including seizures, headaches, and back pain. See Tr. at 506-16, 521, 533-51, 567-75, 1232-1298, 1620-1631 (progress notes from Dr. Tolia ranging from 2012 to 2017).[8] Dr. Tolia completed two Residual Physical Functional Capacity Assessments ("RFC Assessment(s)") in which he provided opinions regarding the effects of Plaintiff's impairments

---

[8]     The administrative transcript contains a number of progress notes from Dr. Tolia's practice, InterCoastal Neurology, that have no signature. See Tr. at 1591-94, 1596-99, 1601-04.

-8-

on Plaintiff's ability to perform work-related functions. One RFC Assessment was provided on April 25, 2013, see Tr. at 625-32, and the other on February 22, 2017, see Tr. at 1534-41.

In the 2013 RFC Assessment, Dr. Tolia concluded that Plaintiff suffered from brain seizures (epilepsy), migraines, back pain, hip pain, tailbone pain, allergies, asthma, and radiculopathy. Tr. at 629-30. He opined that Plaintiff can lift less than ten pounds occasionally, stand and/or walk less than two hours in an eight-hour workday, and sit less than about six hours in an eight-hour workday. Tr. at 626. Dr. Tolia explained that Plaintiff cannot lift more than ten pounds due to her diagnosed radiculopathy. Tr. at 630. He also explained that Plaintiff is limited in her ability to push and/or pull in her upper and lower extremities because her tailbone and hip "pop in [and] out," and because her back is "bulging," "herniated to [the right]," and "dislocated to [the left]." Tr. at 626. He stated that Plaintiff has limited reaching, handling, fingering, and feeling due to "very limited" balance and numbness. Tr. at 628.

Dr. Tolia opined that Plaintiff cannot climb, balance, stoop, kneel, crouch or crawl. Tr. at 627. He explained that Plaintiff cannot climb because she is unable to lift either foot more than half an inch. Tr. at 627. According to Dr. Tolia, Plaintiff cannot lift her feet more than half an inch because her "tailbone will completely dislocate to the [left]." Tr. at 627. He stated she cannot balance on either foot because her "tailbone goes to the right [and her] body goes to the [left]." Tr. at 627. He indicated she cannot "balance in order to stoop or crouch." Tr. at 627. He explained she cannot kneel because her "knees pop in [and] out." Tr. at 627. Similarly, he concluded that Plaintiff cannot crawl because she cannot "get down to her knees or kneel." Tr. at 627.

In the 2017 RFC Assessment, Dr. Tolia opined that Plaintiff can occasionally and frequently lift and/or carry only less than ten pounds. Tr. at 1535. He later stated she is

unable to lift more than ten pounds "due to radiculopathy [at] L5." Tr. at 1539. He opined she can stand and/or walk less than two hours in an eight-hour workday and sit less than about six hours[9] in an eight-hour workday. Tr. at 1535. Dr. Tolia opined Plaintiff is limited in her ability to push and/or pull with her upper and lower extremities. Tr. at 1535. He indicated she cannot bend because her knees "pop [and] lock"; she is unable to balance because her "coccyx is unstable"; and she cannot stoop, kneel, or crawl. Tr. at 1536. He opined Plaintiff is limited in her ability to reach in all directions (including overhead), handle, finger, and feel. Tr. at 1537. He explained that Plaintiff "experiences numbness [and] tingling [in] all upper extremities causing weakness in fine motor skills of arms [and] fingers." Tr. at 1537.

According to Dr. Tolia, Plaintiff needs to avoid concentrated exposure to extreme cold, fumes, odors, dusts, gases, and poor ventilation because "certain elements" can trigger her brain seizures and migraines. Tr. at 1538. He indicated that Plaintiff's epilepsy "prohibits heights[ and] heavy equipment operation." Tr. at 1539.

### 2. Dr. Marathe

Dr. Marathe treated Plaintiff beginning in 2011, primarily for migraines and pain in her back and lower extremities. See Tr. at 580-94, 1445-67, 1570-1584, 1605-09 (progress notes from Dr. Marathe ranging from 2013 to 2017).[10] On April 24, 2013, Dr. Marathe completed an RFC Assessment in which he provided an opinion regarding the effects of Plaintiff's impairments on Plaintiff's ability to perform work-related functions. See Tr. at 616-23.

---

[9]    The RFC Assessment in the administrative transcript is a faxed copy and it appears to read that Plaintiff can sit less than "about 8 hours," Tr. at 1535; however, the administrative transcript contains other identical, more legible RFC Assessment forms (albeit from other assessments) that show "about 6 hours," Tr. at 617, 626.

[10]    The administrative transcript does not contain progress notes from Dr. Marathe from 2011 and 2012, but according to the February 27, 2013 progress note, it appears Plaintiff's first visit with Dr. Marathe was on July 19, 2011. Tr. at 580.

In the RFC Assessment, Dr. Marathe opined that Plaintiff can lift less than ten pounds occasionally and frequently, can stand and/or walk less than two hours in an eight-hour workday, can sit less than six hours in an eight-hour workday, and is limited in her ability to push and/or pull in her upper and lower extremities. Tr. at 617.[11] Dr. Marathe opined that Plaintiff cannot climb, balance, stoop, kneel, crouch, or crawl. Tr. at 618. He stated Plaintiff has limited reaching, handling, and feeling due to "back numbness." Tr. at 619. Dr. Marathe opined that Plaintiff should avoid all exposure to extreme heat, wetness, humidity, noise, vibration, fumes, odors, dusts, gases, poor ventilation, and hazards. Tr. at 620.

### 3. Dr. Le

Dr. Le is the state agency consultant who, on November 6, 2015, reviewed Plaintiff's second DIB application. See Tr. at 774-76. Dr. Le opined that Plaintiff is capable of performing light work except she needs to avoid even moderate exposure to extreme heat, humidity, noise, vibration, fumes, odors, dusts, gases, poor ventilation, and hazards. Tr. at 775-76.

### B. Applicable Law

The Regulations[12] establish a "hierarchy" among medical opinions[13] that provides a framework for determining the weight afforded each medical opinion: "[g]enerally, the opinions of examining physicians are given more weight than those of non-examining

---

[11]     It appears that the explanation for this opinion, as well as for other opinions in Dr. Marathe's RFC Assessment, is in a note attached to the assessment. See Tr. at 617-19 (indicating, "[S]ee note"). The note, however, is not part of the administrative transcript.

[12]     On January 18, 2017, the SSA revised the rules regarding the evaluation of medical evidence and symptoms for claims filed on or after March 27, 2017. See Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844-01, 5844 (January 18, 2017). Because Plaintiff filed her claims before that date, the undersigned cites the rules and Regulations applicable to Plaintiff's claims, unless otherwise noted.

[13]     "Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [a claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions." 20 C.F.R. § 404.1527(a)(2); see also 20 C.F.R. § 404.1513(a) (defining "[a]cceptable medical sources").

physicians[;] treating physicians[' opinions] are given more weight than [non-treating physicians;] and the opinions of specialists are given more weight on issues within the area of expertise than those of non-specialists." McNamee v. Soc. Sec. Admin., 164 F. App'x 919, 923 (11th Cir. 2006) (citing 20 C.F.R. § 404.1527(d)(1), (2), (5)). The following factors are relevant in determining the weight to be given to a physician's opinion: (1) the "[l]ength of the treatment relationship and the frequency of examination"; (2) the "[n]ature and extent of [any] treatment relationship"; (3) "[s]upportability"; (4) "[c]onsistency" with other medical evidence in the record; and (5) "[s]pecialization." 20 C.F.R. §§ 404.1527(d)(2)-(5), 416.927(d)(2)-(5); see also 20 C.F.R. §§ 404.1527(e), 416.927(f).

With regard to a treating physician or psychiatrist,[14] the Regulations instruct ALJs how to properly weigh such a medical opinion. See 20 C.F.R. § 404.1527(c). Because treating physicians "are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [a claimant's] medical impairment(s)," a treating physician's or psychiatrist's medical opinion is to be afforded controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record. Id. When a treating physician's or psychiatrist's medical opinion is not due controlling weight, the ALJ must determine the appropriate weight it should be given by considering the factors identified above (the length of treatment, the frequency of examination, the nature and extent of the treatment relationship, as well as the

---

[14]     A treating physician or psychiatrist is a physician or psychiatrist who provides medical treatment or evaluation to the claimant and who has, or has had, an ongoing treatment relationship with the claimant, as established by medical evidence showing that the claimant sees or has seen the physician with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for the medical condition. See 20 C.F.R. § 404.1502.

supportability of the opinion, its consistency with the other evidence, and the specialization of the physician). Id.

If an ALJ concludes the medical opinion of a treating physician or psychiatrist should be given less than substantial or considerable weight, he or she must clearly articulate reasons showing "good cause" for discounting it. Hargress v. Soc. Sec. Admin., Comm'r, 883 F.3d 1302, 1305 (11th Cir. 2018) (citation omitted); Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997). Good cause exists when (1) the opinion is not bolstered by the evidence; (2) the evidence supports a contrary finding; or (3) the opinion is conclusory or inconsistent with the treating physician's or psychiatrist's own medical records. Hargress, 883 F.3d at 1305 (citation omitted); Phillips, 357 F.3d at 1240-41; see also Edwards v. Sullivan, 937 F.2d 580, 583-84 (11th Cir. 1991); Schnorr v. Bowen, 816 F.2d 578, 582 (11th Cir. 1987) (stating that a treating physician's medical opinion may be discounted when it is not accompanied by objective medical evidence).

An examining physician's opinion, on the other hand, is not entitled to deference. See McSwain v. Bowen, 814 F.2d 617, 619 (11th Cir. 1987) (per curiam) (citing Gibson v. Heckler, 779 F.2d 619, 623 (11th Cir. 1986)); see also Crawford, 363 F.3d at 1160 (citation omitted). Moreover, the opinions of non-examining physicians, taken alone, do not constitute substantial evidence. Broughton v. Heckler, 776 F.2d 960, 962 (11th Cir. 1985) (citing Spencer v. Heckler, 765 F.2d 1090, 1094 (11th Cir. 1985)). However, an ALJ may rely on a non-examining physician's opinion that is consistent with the evidence, while at the same time rejecting the opinion of "any physician" whose opinion is inconsistent with the evidence. Oldham v. Schweiker, 660 F.2d 1078, 1084 (5th Cir. Unit B. 1981) (citation omitted).

An ALJ is required to consider every medical opinion. <u>See</u> 20 C.F.R. §§ 404.1527(d),

416.927(d) (stating that "[r]egardless of its source, we will evaluate every medical opinion we

receive"). While "the ALJ is free to reject the opinion of any physician when the evidence

supports a contrary conclusion," <u>Oldham</u>, 660 F.2d at 1084 (citation omitted); <u>see also</u> 20

C.F.R. §§ 404.1527(d)(2), 416.927(d)(2), "the ALJ must state with particularity the weight

given to different medical opinions and the reasons therefor," <u>Winschel v. Comm'r of Soc.

Sec.</u>, 631 F.3d 1176, 1179 (11th Cir. 2011) (citing <u>Sharfarz v. Bowen</u>, 825 F.2d 278, 279

(11th Cir.1987)); <u>Moore v. Barnhart</u>, 405 F.3d 1208, 1212 (11th Cir. 2005); <u>Lewis</u>, 125 F.3d

at 1440.

## C. ALJ's Decision/Analysis of ALJ's Decision

### 1. Dr. Tolia and Dr. Marathe

Regarding Dr. Tolia's 2013 opinion and Dr. Marathe's opinion, the ALJ stated as

follows:

> [L]ittle to no weight is given to the findings and opinions from Drs. Marathe and
> Tolia at Exhibits 18F and 19F. These extreme restrictions of basically a very
> reduced range of sedentary work are not based on clinical findings or their own
> records that show minimal clinical and diagnostic findings. Greater weight is
> afforded to the objective medical evidence, as this is a better indication of the
> extent of [Plaintiff's] impairments.

Tr. at 680.

As to Dr. Tolia's 2017 opinion, the ALJ wrote the following:

> Dr. Tolia's opinions are given little weight, as the record shows [Plaintiff] is
> functioning at a much higher level than he notes. Furthermore, his opinions are
> not supported by his own treatment notes documenting minimal clinical and
> diagnostic findings and conservative treatment.

Tr. at 681.

-14-

Elsewhere in the Decision, the ALJ discussed objective evidence in the record. <u>See</u> Tr. at 678-80. He indicated that Dr. Tolia's "findings from 2014 through 2017 have remained normal with the exception of decreased range of motion of the lumbar spine and lumbar tenderness." Tr. at 679. As to Dr. Marathe, the ALJ stated his "findings include paraspinal muscle spasm and tenderness" and that "Dr. Marathe has recommended stretching exercises, medications, moist heat, and awareness of lifting heavy objects as treatment for her pain." Tr. at 679 (citation omitted). The ALJ stated nothing further about these physicians' treatment notes.

The ALJ erred in addressing the medical opinions of treating physicians Dr. Tolia and Dr. Marathe. The ALJ did not explain with the requisite specificity the reasons for discounting their opinions. Indeed, the ALJ for the most part merely recited recognized "good cause" reasons for discounting these opinions, without any corresponding explanation. <u>Cf.</u>, <u>e.g.</u>, <u>Rosario v. Comm'r of Soc. Sec.</u>, 877 F. Supp. 2d 1254, 1267 (M.D. Fla. 2012) (finding ALJ erred in merely summarizing doctors' treatment notes and then stating doctors' opinions were inconsistent with their own medical records without explaining the inconsistency as "it would be improper for the Court to draw its own conclusions from the ALJ's summary of the medical evidence"); <u>Gayler v. Astrue</u>, No. 5:07-cv-121-Oc-GRJ, 2008 WL 4327050, at *6 (M.D. Fla. Sept. 18, 2008) (unpublished) (reversing and remanding ALJ's decision to discount a treating physician's opinion when "the ALJ failed to explain or even provide a clue as to how [the treating physician's] opinion was inconsistent with other record medical evidence"); <u>Russ v. Astrue</u>, No. 3:07-cv-1213-J-MCR, 2009 WL 764516, at *10 (M.D. Fla. Mar. 20, 2009) (unpublished) (finding an ALJ's "dismissal" of a treating physician's opinion was "deficient"

when the ALJ noted the opinion "was 'not supported by objective findings,'" but did not provide any explanation for the reason) (quoting ALJ's Decision).

The ALJ's failure to explain with more specificity the reasons for discounting Dr. Tolia's and Dr. Marathe's opinion is particularly troublesome given the length and frequency of Plaintiff's treatment with these physicians. Dr. Tolia and Dr. Marathe "are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [Plaintiff's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone . . . ." 20 C.F.R. § 404.1527(d)(2). Yet, the ALJ merely referred to the objective evidence in a conclusory manner and barely mentioned Dr. Tolia's and Dr. Marathe's voluminous treatment records.

Further, the undersigned notes that the ALJ's 2013 decision was reversed and remanded in part because of the ALJ's failure to "relate [the treatment records] to the respective opinions of Drs. Tolia and Marathe or articulate how these records contradicted or failed to support the opinions." Tr. at 741. With regard to Dr. Tolia's 2013 opinion and Dr. Marathe's opinion, the ALJ's rationale in the Decision is identical to the one he gave in his 2013 decision, except here, he referred to the physicians by name and cited another "good cause" reason (albeit without providing an explanation). Compare Tr. at 20 (2013 decision), with Tr. at 680.[15] The ALJ has again failed to relate Dr. Tolia's and Dr. Marathe's treatment

---

[15]     In the 2013 decision, the ALJ stated as follows with respect to Dr. Tolia's 2013 opinion and Dr. Marathe's opinion,

> [L]ittle to no weight is given to the findings at Exhibits 18F and 19F. These extreme restrictions of basically a very reduced range of sedentary work are not based on clinical findings. Greater weight is afforded to the objective medical evidence, as this is a better indication of the extent of [Plaintiff's] impairments.

(continued...)

-16-

notes to their opinions or explain how their notes were inconsistent with their opinions. Without the ALJ clearly articulating an explanation for discounting the opinions of these physicians, judicial review is frustrated because the Court cannot determine whether the ALJ's conclusions were rational and supported by substantial evidence.

For all of the foregoing reasons, reversal and remand is required for further consideration of the medical opinions of Dr. Tolia and Dr. Marathe.

**2. Dr. Le**

The undersigned finds no error in the ALJ's decision not to include certain limitations opined by Dr. Le in the RFC as he gave the opinion "partial weight." Tr. at 681. Proper consideration of the opinions of Dr. Tolia and Dr. Marathe, however, has the potential of affecting the weight assigned to Dr. Le's opinion. Therefore, if appropriate, the ALJ should reconsider Dr. Le's opinion.

**V. Conclusion**

After due consideration, it is

**RECOMMENDED**:

1.      The Clerk of Court is directed to enter judgment pursuant to sentence four of 42 U.S.C. § 405(g), and pursuant to § 1383(c)(3), **REVERSING** the Commissioner's final decision and **REMANDING** this matter with the following instructions:

(A)     Reevaluate the opinions of Dr. Tolia and Dr. Marathe, assign the appropriate weight to such opinions, and explain the reasoning behind the weight assigned;

---

[15](...continued)
Tr. at 20.

      (B)    If appropriate, reevaluate the opinion of Dr. Le;

      (C)    If appropriate, address the other issues raised by Plaintiff in this appeal; and

      (D)    Take such other action as may be necessary to resolve these claims properly.

2.    The Clerk is further directed to close the file.

3.    In the event benefits are awarded on remand, Plaintiff's counsel shall ensure that any § 406(b) or 1383(d)(2) fee application be filed within the parameters set forth by the Order entered in Case No. 6:12-mc-124-Orl-22 (In Re: Procedures for Applying for Attorney's Fees Under 42 U.S.C. §§ 406(b) and 1383(d)(2)).

**RESPECTFULLY RECOMMENDED** at Jacksonville, Florida on January 24, 2019.

*James R. Klindt*
**JAMES R. KLINDT**
United States Magistrate Judge

bhc
Copies to:

Honorable Paul G. Byron
United States District Judge

Counsel of record

-18-